courts, but to other means pointed out by law. I will not stop to point out all the provisions of the statutes which justify this conclusion. By section 113 of the act of June 30, 1864 [13 Stat. 279], in force when the alleged illegal income tax was assessed against the complainant, it is made the duty of the proper assistant assessor to assess and make returns of all incomes subject to taxation. Of this assessment public notice is to be given; and it is provided "that every person feeling aggrieved by the decision of the assistant assessor in such cases, may appeal to the assessor of the district, and his decision thereon shall be final." The right of appeal thus granted, seems, in the opinion of the law-making power, to have been ample for the security of the tax-payer against the errors and wrongs of the assistant assessor. But this is not the only provision by which such errors or wrongs may be finally remedied. Although it is expressly declared that the decision of the district assessor shall be final, an appeal lies to another and higher official. By section 44 of the act it is provided "that the commissioner of internal revenue, subject to the regulations prescribed by the secretary of the treasury, shall be, and he is hereby authorized, on appeals to him made, to remit, refund, and pay back all duties erroneously or illegally assessed or collected, and all duties that shall appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected," etc. The power thus vested in the commissioner of revenue is to be exercised under the supervision of the secretary of the treasury, to whom, practically, there is an appeal from the commissioner. And I need hardly add, if the rights of the party aggrieved are not secured by these means, as a final resort, there is an appeal to congress, whose power to afford redress is unquestionable. The provisions of the statute referred to seem clearly to sustain the proposition that it was intended by congress that wrongs and grievances occurring under the internal revenue act should be investigated and passed upon, not by the courts, but by the officials immediately charged with their execution. And it is not for this court to pronounce upon the justice or policy thus sanctioned by the law-making power. The internal revenue laws originated in a great national emergency, and were necessarily so framed as to ensure their prompt execution. That they are harsh in some of their provisions, and may develop in their execution cases of official malfeasance and oppression, is not doubted. The remedy for such results is with the legislative, and not the judicial department, unless the power is expressly conferred on the latter. The courts of the United States are courts of limited jurisdiction, and can exercise such powers only as are expressly granted by law, or clearly implied from the objects of their creation.

It may perhaps be insisted, though it was not urged in the argument, that if the jurisdiction claimed in this case does not exist under the clause of the constitution quoted, it may be exercised by the circuit courts, under the general chancery powers vested in them by the constitution and laws. These courts undoubtedly possess an extensive jurisdiction under this head. Without considering at length the source and extent of this jurisdiction, it may be affirmed as a clear proposition, that the case made in the complainant's bill is not one that brings it within the scope of the general chancery power of this court. There is no averment in the bill that the complainant will suffer irreparable injury from the collection of the alleged illegal income tax. Nor is it averred that he was without a remedy by law. As a basis for the proper action of a court of chancery, it must appear that he has appealed to the proper district assessor, under the section of the statute before cited; that such appeal has not resulted in the redress of the wrong complained of; and that he is wholly without a remedy, except by the interposition of a court of chancery. I do not say, if the bill had been so framed, a proper case for the action of a court of chancery would be presented. But it is clear that without the averment of irreparable injury, and that all the means of redress secured by law had been unavailingly resorted to, there would be no sufficient ground for the interposition of a court of equity. The court has no jurisdiction, and the injunction must be dissolved.

———

ROBB (COMEGYSS v.).  See Case No. 3,049.

ROBB (DAVIS v.).  See Case No. 3,649.

ROBB (DIDLAKE v.).  See Case No. 3,899.

———

## Case No. 11,878.

Case of ROBBINS.

[See Case No. 16,175.]

———

ROBBINS' CASE.  See Case No. 16,175.

———

## Case No. 11,879.

Ex parte ROBBINS.

[2 Gall. 320.] [1]

Circuit Court, D. Rhode Island.  Nov. Term, 1814.

DISTRICT ATTORNEY — FEES — DISTRIBUTION —ADMIRALTY PRACTICE—DELIVERY ON BAIL.—NOTICE.

1. In what manner the fees taxed for the district attorney are to be distributed, where part of the services have been performed in the time of one district attorney, and part in the time of his predecessor.

[Cited in Jerman v. Stewart, 12 Fed. 278.]

———

[1] [Reported by John Gallison, Esq.]